**SO ORDERED.**

**SIGNED this 5th day of November, 2012.**




Robert E. Nugent
United States Chief Bankruptcy Judge

_____

DESIGNATED FOR ON-LINE PUBLICATION
BUT NOT PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE:

ANITA LOUISE HANKINS, ) Case No. 12-10884
) Chapter 7
Debtor. )
_____ )
)
DISCOVER BANK, )
)
Plaintiff, )
v. ) Adversary No. 12-5114
)
ANITA LOUISE HANKINS, )
)
Defendant. )
_____ )

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS**

If Discover Bank's boilerplate dischargeability complaint states a cause of action under 11

-1-

U.S.C. § 523(a)(2) (A) that is plausible on its face, it will survive Anita Hankins' motion to dismiss for failing to state a claim. But if the complaint fails to plead enough facts to support its facial allegations that she incurred credit card debt that she knew she could not pay and did not intend to pay, it must be dismissed. Likewise, if Discover's blanket allegation that all of Ms. Hankins' charges during the three months leading up to her filing were for luxury items under § 523(a)(2)(C)(i)(I) lacks plausibility, it, too, must be dismissed. After careful review of the complaint, I conclude that it is not facially plausible that the items charged were luxury items or that the statutory $600 threshold in (a)(2)(C)(i)(I) has been met. Even so, I conclude that the complaint states a cause of action for excepting these and other charges from discharge under § 523(a)(2), though Discover will have the burden of proving the debtor's fraud because it can receive no benefit from the subpart (C) presumption with respect to any of the charges. The presumption simply does not arise.

Jurisdiction

An adversary proceeding to determine the dischargeability of particular debts is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which this Court may exercise subject matter jurisdiction.[1]

Facts as Pled in Complaint

Anita Hankins filed this bankruptcy case on April 12, 2012. The 90-day period preceding the filing commenced on January 13, 2012. Discover filed this complaint on July 10, 2012. Discover alleges that Hankins applied for and received a credit card account from Discover and owed

---

[1] 28 U.S.C. § 157(b)(1) and § 1334(b). Unless otherwise indicated, all statutory references are to Title 11, U.S.C., as amended. Plaintiff Discover Bank appears by its attorney Lawrence G. Reinhold. Defendant Anita Louise Hankins appears by her attorney Don W. Riley.

-2-

Discover $11,325.93 on the petition date.[2] Discover also alleges that Hankins' schedules indicate that she has monthly income of $200 and monthly expenses of $200. She listed $33,249 in credit card debt on her schedules. The summary of schedules shows that Hankins has total assets of $2,617 and total liabilities of $33,734.[3]

The complaint lists 36 credit card charges made by Hankins in the 90 days preceding her petition date and attached to the complaint is a running account statement itemizing the charges comprising the total debt incurred between September 1, 2011 and March 21, 2012.[4] Most charges were to variety or discount stores, fast-food restaurants, grocers and retail giants Walmart and KMart. She has a couple of small charges to jewelers, and two charges to the local Harley-Davidson dealership, one of which is for $1,000. Other than the identification of the merchants in the account statement, there are no allegations or description of the goods or services purchased by Hankins to suggest that they were incurred for luxury items. Apart from the Harley dealership, none of the other merchants would be considered "exclusive" or high-end establishments and the majority of charges are less than $100. The account statement shows that Hankins made six monthly payments on her account during the period September of 2011 to March of 2012: $102 on September 16, 2011; $103 on October 19, 2011; $101 on November 18, 2011; $112 on December 20, 2011 and in the 90 days before she filed, Hankins made two payments: $161 on January 14, 2012; and $174 on February

---

[2] There is no indication when Hankins opened her Discover account.

[3] Discover erroneously alleges $141,147 in assets and $165,200 in liabilities.

[4] Discover omits from its allegations, two additional charges on January 14, 2012 that fall within the 90-day period, but they would not affect the outcome of the motion to dismiss if they were to be included..

-3-

20, 2012.⁵ During this same seven month period she was charging between $650 and $1,400 a month. The 36 charges alleged by Discover as charges incurred for luxury items during the 90 day period total $2,691.11; for these it contends it is entitled to the presumption of fraud and nondischargeability under § 523(a)(2)(C).

Discover alleges that each of Hankins' charges made within the 90-day period before her petition is "a charge on the account for goods and services not reasonably believed to be reasonably necessary for the maintenance and support" of the debtor, but does not detail why, for instance, a $19 charge to the Golden Corral Restaurant (January 17, 2012), $48 at K-Mart (February 3, 2012), or $71 at Dillon's, a grocery store (March 20, 2012) constitute luxury charges. There are, however, some charges that could be, including the $1,000 charge to Alef's Harley-Davidson on March 13, 2012 and the $155 charge to One Day Jewelry on February 9, 2012.⁶ There are also sizeable charges to discount retailers between November 25, 2011, Thanksgiving Day, and December 17, 2011, suggesting that Hankins did a lot of Christmas shopping with her Discover card, but these charges did not occur during the 90-day window. Finally, Discover alleges that Hankins was insolvent and that each time she made a charge, she actually or impliedly represented that she intended to repay Discover and that Discover justifiably relied on those representations.

Hankins moved to dismiss the complaint, claiming that it is implausible on its face, that

---

⁵ The actual monthly billing statements issued to Hankins are not provided to ascertain the manner of calculating her monthly payments, but the Court suspects that the monthly payments made by Hankins were the minimum monthly payments due under the terms of her Discover account.

⁶ In addition to the $1,000 charge to Alef's on March 13, 2012, a second charge of $44 on March 20 meets the aggregate $600 minimum to a single creditor under § 523(a)(2)(C)(i)(I) if the goods or services qualify as luxury items. The One Day Jewelry charge, however, is the only charge to this creditor during the 90-day period and is less than $600.

-4-

Discover did not appear at the first meeting or do any other pre-complaint investigation or discovery, and that Discover has failed to allege sufficient factual circumstances from which Hankins' fraudulent intent could be inferred.[7] Discover responds that the charges made inside the 90-day period are presumed fraudulent and nondischargeable under § 523(a)(2)(C) and, though its brief is terse to say the least, seems to argue that this presumption saves Discover from having to allege actual factual circumstances concerning the fraud or the charges as being in the nature of luxury items.

### Fed. R. Civ. P. 12(b)(6) Standards

I take Discover's pleaded allegations as true, resolving all doubts in its favor. To determine whether dismissal is appropriate, I must consider whether these claims are "facially plausible" based upon the facts pled in the complaint.[8] As the Tenth Circuit has noted, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief" and these "[f]actual allegations must be enough to raise a right to relief above the speculative level."[9] It is plainly insufficient to make conclusory allegations that parrot the language of the statute without factual allegations to suggest defendant is liable.[10] And as explained in *Ashcroft v. Iqbal,* Rule 8(a)'s "short and plain statement of the claim" standard does alleviate the

---

[7] Adv. Dkt. 8.

[8] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (complaint must plead enough facts to state a claim to relief that is plausible on its face; the alleged claims must nudge "across the line from conceivable to plausible.").

[9] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008), quoting *Twombly*, 550 U.S. at 570.

[10] *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012), citing *Twombly,* 550 U.S. at 555.

requirement of factual allegations.[11]

Analysis

This credit card debt nondischargeability case is brought under § 523(a)(2)(A), the fraud discharge exception. For a portion of the debt, some $2,700, Discover seeks to invoke the statutory presumption of nondischargeabiliy applicable to debt incurred for luxury goods under § 523(a)(2)(C)(i)(I). Failing that, or for the balance of the $11,325 credit card debt, Discover falls back on § 523(a)(2)(A), commonly referred to as the "actual fraud" exception to discharge. Without the statutory presumption, it will be incumbent upon Discover to prove that at the time Hankins incurred the credit card debt, she did not intend to pay it. Such cases generally turn on the facts and circumstances of the particular case. Today, however, the defendant's motion to dismiss under Rule 12(b)(6) asks this Court to determine whether Discover has sufficiently pled its presumptively fraudulent claim and its actual fraud dischargeability claim.[12] Thus, the Court will apply the *Twombly* and *Iqbal* analysis articulated by the Supreme Court and Rule 12(b)(6) of the Federal Rules of Civil Procedure in deciding the motion.

### *Credit Card Fraud and the § 523(a)(2)(A) Exception to Discharge; Presumed Fraud under § 523(a)(2)(C)(i)*

Section 523(a)(2)(A) excepts from discharge debts the debtor incurred by false pretenses, false representations, or actual fraud, other than statements respecting the debtor's financial condition. A knowingly false representation must be relied upon by the creditor to its detriment, and

---

[11] 556 U.S. 662, 677-78, 129 S.Ct. 1937 (2009) (citing *Twombly,* pleading under Fed. R. Civ. P. 8 demands more than unadorned "the-defendant-unlawfully-harmed-me" and naked assertions devoid of factual enhancement).

[12] Fed. R. Civ. P. 12(b)(6) is made applicable to adversary proceedings by Fed. R. Bankr. P. 7012.

-6-

that reliance must be justifiable.[13] In the credit card context, the "representation" a debtor makes when she charges a purchase is implied: she is essentially telling the creditor that while she isn't paying for the item or service she is purchasing now, she intends to.[14] Mere use of the card to charge something now that the debtor is otherwise unable to pay for now is not fraud; it is exactly what credit cards are for. The only representation a debtor makes when she uses a credit card is that she intends at the time she incurs the charge to pay it when billed. A court cannot infer that this representation is fraudulent simply because the debt wasn't paid. There needs to be more indication of the debtor's subjective intent, whether that is directly proven or inferred from the totality of circumstances.[15]

In the *Kukuk* case, the Tenth Circuit Bankruptcy Appellate Panel listed 12 nonexclusive factors to determine a credit card debtor's intent under the totality of the circumstances test:[16]

(1) the length of time between the charges and the filing of bankruptcy;

(2) whether the debtor consulted an attorney regarding bankruptcy prior to the charges;

(3) the number of charges made;

(4) the amount of the charges;

(5) the financial condition of the debtor at the time the charges were made;

---

[13] *Field v. Mans,* 516 U.S. 59, 70-72, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995) (Justifiable reliance is a less demanding standard than reasonable reliance; while it does not require the creditor to investigate the accuracy of the representation, if the true facts are patently apparent or the creditor has information that should serve as a warning to investigate further, the reliance is not justified.).

[14] *In re Kukuk*, 225 B.R. 778, 785 (10th Cir. BAP 1998).

[15] *Id*. at 786. *See also Flower Bros. v. Young (In re Young)*, 91 F.3d 1367, 1375 (10th Cir. 1996).

[16] *Id*. at 786 [citations omitted].

-7-

(6) whether the charges were above the credit limit of the account;

(7) whether the debtor made multiple charges on any given day;

(8) whether or not the debtor was employed;

(9) the debtor's employment prospects;

(10) the debtor's financial sophistication;

(11) whether there was a sudden change in the debtor's buying habits; and

(12) whether the purchases were made for luxuries or necessities.

Other than the number and amounts of Hankins' charges and the debtor's straitened financial circumstances, Discover pleads few facts that would demonstrate the presence of most of these factors. Though its brief is less than direct on the point, Discover appears to rely on the § 523(a)(2)(C)(i)(I) presumption that the charges for luxury or non-support items were fraudulent and nondischargeable, at least as to those 36 credit card charges during the 90-day period preceding Hankins' filing.

To obtain the benefit of the presumption, however, the requirements of § 523(a)(2)(C)(i)(I) must be met. A plaintiff proceeding under the statutory presumption must show the existence of six elements: (1) a consumer debt; (2) owed to a single creditor; (3) aggregating more than $600; (4) for luxury goods or services; (5) incurred by an individual debtor; and (6) on or within 90 days before the filing of the petition.[17] While luxury goods are not specifically defined by the Code, § 523(a)(2)(C)(ii)(II) specifies that necessities are excluded – "goods or services reasonably necessary

---

[17] *In re Alexo,* 436 B.R. 44, 49 (Bankr. N.D. Ohio 2010).

-8-

for the support or maintenance of the debtor . . . ."[18] In determining whether an item is a luxury good, the circumstances surrounding the purchase, whether the item serves a significant family function, and whether the purchase shows financial irresponsibility, may be considered.[19] Even if the elements of § 523(a)(2)(C)(i)(I) are met, the presumption of nondischargeability is a rebuttable one.[20]

With these legal principles in mind, a careful review of the complaint is next. If its allegations are all taken as true, does it state a claim that is plausible on its face? I first consider whether Discover has sufficiently pled the statutory presumption of fraud and nondischargeability under § 523(a)(2)(C) being mindful that the statutory presumption may only be invoked for the credit card charges made during the 90 days before filing. Here, Discover includes each and every credit charge during the 90-day period as a charge for a luxury good or service.[21] With respect to these 36 credit card charges totaling $2,691, Discover alleges for each transaction the following: "On [date], [ ] days before the entry of the Order for Relief, [defendant] incurred a charge on the

---

[18] *In re Shaw,* 294 B.R. 652, 655 (Bankr. W.D. Pa. 2003) (luxuries are extravagances or self-indulgences); *In re Vernon,* 192 B.R. 165 (Bankr. N.D. Ill. 1996) (describing luxury goods as extravagant, indulgent, or non-essential object)

[19] *In re Meyer,* 296 B.R. 849, 865 (Bankr. N.D. Ala. 2003) (charges made at gas stations, grocery stores, department stores, a pharmacy, and restaurants are not for luxury items).

[20] *See In re Kountry Korner Store,* 221 B.R. 265, 269 (Bankr. N.D. Okla. 1998) (once presumption is successfully invoked, burden shifts to debtor to disprove one element of fraud required for nondischargeability); *In re Shaw,* 294 B.R. at 656 (debtor may successfully rebut the presumption by showing that the debt was not incurred in contemplation of discharge in bankruptcy).

[21] *See In re Pusateri,* 432 B.R. 181, 203 (Bankr. W.D. N.C. 2010) (describing the inquiry a creditor was required to make as to "indeterminate" charges incurred by debtor prior to filing complaint alleging the charges to be nondischargeable luxury goods or services; criticizing creditor for including all charges within 90 day period when some were obviously not luxury purchases).

-9-

account for goods or services not reasonably believed to be reasonably necessary for the maintenance and support of [defendant] nor a dependent of [defendant] in the amount of . . . ."[22] Only by referring to the account statement attached to the complaint to match the date and amount of the credit card transaction alleged can one ascertain the identity of the merchant in each transaction. And the identity of the merchant is the *only* fact that sheds any faint light on the nature of the goods or service purchased in the transaction. But the reasonable inference to be drawn from the identity of the merchants here is that nearly none of the charges was incurred for luxury goods or services.

Looking at the 36 charges that are alleged (Complaint ¶s 7-42), all of the charges but two can be quickly eliminated without resorting to a determination of whether luxury goods were purchased, because the amount of the charge for the named merchant, whether a single charge or in the aggregate, is less than the $600 threshold.[23] Indeed, most of the charges are less than $100, even in the aggregate. Nearly all of these merchants are in any event, discount or low-end retailers and

---

[22] *See* Adv. Dkt. 1, ¶s 7-42.

[23] Credit card charges for the following merchants as cross-referenced to paragraphs of the complaint cannot be subjected to the statutory presumption of nondischargeability: ¶ 7 (Avon); ¶s 8, 40 (Michael's); ¶ 10 (Dillon's Grocery); ¶s 11, 39 (Noori Convenience Store); ¶s 12, 15 (Petsmart); ¶ 13 (Ryan's Restaurant); ¶s 14, 32, 34 (Furr's Restaurant); ¶s 16, 24, 31 (Dollar General); ¶s 18, 20 (Quik Trip); ¶s 19, 37, 41 (Walmart); ¶ 21 (Jimmie's Diner); ¶s 22, 23 (Big Lots); ¶ 25 (One Day Jewelry); ¶ 26 (Chili's Restaurant); ¶ 27 (Sam's Club); ¶ 28 (Jimmy's Egg); ¶s 29, 30 (Kmart); ¶s 33, 38 (Golden Corral); ¶ 35 (Up N Smoke); ¶ 36 Cox Communications; and ¶ 42 (T-Mobile). The Court notes in paragraph 22 of the Complaint plaintiff alleges a credit transaction of February 23, 2012 in the amount of $20.77. The account statement attached to the complaint shows that the correct amount of this transaction is $40.77, but the corrected amount does not change the result as the aggregate amount charged for goods from Big Lots is still far below the $600 threshold.

restaurants.[24] With respect to these charges, the presumption of nondischargeability does not arise.

That leaves only two credit charges alleged by Discover to be presumptively fraudulent, both were charges incurred for purchases of goods or services at Alef's Harley-Davidson – $1,000 on March 13, 2012 (Complaint ¶ 17) and $44.51 on March 20, 2012 (Complaint ¶ 9). Other than the Court's local knowledge that Alef's is a motorcycle dealership, no other facts are alleged by Discover indicating what specific goods or services were purchased from Alef's. Discover undoubtedly is suggesting, without alleging, that Hankins unnecessarily purchased a motorcycle that qualifies as a luxury item. That is certainly one *possibility*, but that is not the only reasonable inference that can be drawn from Discover's nearly fact-free complaint. Perhaps Hankins had no means of transportation and purchased a motorcycle for that purpose, or maybe she incurred the charge for service or repair to her only means of transportation. Perhaps Hankins purchased a motorcycle for a dependent as the dependent's sole means of transportation. There are several *possible* inferences that can be drawn from this bare allegation. *Twombly* requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[25] Plausibility requires more than a "sheer possibility" that the defendant is liable under the claim alleged.[26] This, Discover has failed to do. As the Supreme Court

---

[24] *In re Zeman,* 347 B.R. 28 (Bankr. W.D. Tex. 2006) (summary judgment granted for defendant on § 523(a)(2)(C) luxury goods count where only "evidence" of luxury goods was the identity of merchants alleged in pleadings – Target, Walgreens, Whataburger, Regal Cinemas, restaurants, groceries, Petsmart – *see* fn. 1 therein; court characterizes plaintiff's lawsuit as a "shakedown" ); *In re Meyer,* 296 B.R. at 866 (In absence of details of the charges debtor made at Walmart, Sears, J.C. Penney, and a carpet store, the Court cannot assume that the charges were made for luxury goods).

[25] 550 U.S. at 556.

[26] *Id.*

-11-

stated in *Iqbal*:

> Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8 (a)(2).
> . . . pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.[27]

With respect to the Alef's Harley-Davidson charges, Discover has not met the facial plausibility standard in pleading the luxury goods statutory presumption in § 523(a)(2)(C).

Discover's wholesale failure to plead *anything* about the charges other than its boilerplate refrain that they are "not reasonably believed to be reasonably necessary for maintenance and support" is inadequate.[28] A close reading of the allegation reveals a critical pleading deficiency. Discover does not specifically allege these 36 charges were for luxury goods, necessary to invoke § 523(a)(2)(C). Instead, Discover alleges the charges were for goods or services that were not necessary for support or maintenance. In other words, Discover alleges the charges were not for necessities. Even if the goods purchased on credit do not qualify as necessities, that does not automatically make them luxuries. Goods can fall in between necessities and luxuries as numerous cases so hold.[29] At the pleading stage, it was incumbent upon Discover to allege the credit card charges were for luxury goods, coupled with factual allegations from which the "luxury"

---

[27] 556 U.S. at 678-79.

[28] *See* note 24, *supra,* and note 29, *infra*; *In re Hampsohn,* 429 B.R. 360 (Bankr. N.D. Ga. 2009) (creditor would not be granted default judgment on 523(a)(2)(A) and (C) claims where it did not plead sufficient facts to establish (a)(2)(C) was applicable or to establish facts from which a finding of actual, subjective fraudulent intent could be inferred).

[29] *See Alexo, supra* at 49; *In re Shaw, supra* at 655; *In re Blackburn,* 68 B.R. 870, 874 (Bankr. N.D. Ind. 1987); *In re Stewart,* 91 B.R. 489, 497 (Bankr. S.D. Iowa 1988).

-12-

characterization could be inferred. Here, it has done neither and this is fatal to maintaining its presumptive nondischargeability claim. Discover's § 523(a)(2)(C) claim with respect to the 36 transactions alleged in the Complaint (¶s 7-42) must therefore be dismissed for failure to state a claim upon which relief may be granted.

The dismissal of the presumptive nondischargeability claim does not, however, eliminate Discovery's allegation that these 36 credit card charges were fraudulent. Even without the benefit of the presumption, Discover may still have a claim under § 523(a)(2)(A) provided it is sufficiently pled. Without the presumption of fraud at trial, Discover will be tasked to prove the elements of its (a)(2)(A) claim charge by charge, including defendant's intent not to pay for the goods or services at the time the credit card charge was made.

Has Discover sufficiently pled its § 523(a)(2)(A) claim with respect to *all* of the transactions comprising the credit card debt? Are there sufficient factual allegations, and not mere conclusory allegations, from which to infer that Hankins had no intent to pay the debt at the time the credit card charges were made? Answering these questions requires the Court to examine the complaint and determine the presence of the *Kukuk* factors. The bare allegations of the complaint coupled with the attached account statement, suggest several: (1) many charges were made within a few months of filing;[30] (2) there were lots of charges; (3) some of the charges were for large amounts;[31] and (4)

---

[30] Approximately 60 charges were made during the seven-month period September 2011-March 2012, with two-thirds of those charges being incurred in the 3 months before filing.

[31] The larger charges were to Alef's Harley Davidson ($1,000) on March 13, 2012; Big Lots ($482) on December 10, 2011; Walmart ($430) on November 25, 2011; and Best Buy ($295) on October 29, 2011.

-13-

there were multiple charges on several days.[32] The complaint alleges that, according to her schedules, the debtor makes and spends only $200 a month but accumulated a credit card account that, by the time the case was filed, exceeded $11,000. That is nearly five times her annualized income of $2,400. It is plausible that Discover can show that the debtor made these charges without intending to pay them. I therefore conclude that Discover's complaint, boilerplate though it may be, meets the plausibility standard and its § 523(a)(2)(A) claim survives the motion to dismiss.

Unlike the debtor, I do not presume that Discover filed this bare-bones complaint in hopes of a quick default judgment or settlement. But even a cursory examination of the account statement would reveal that the amounts and type of merchants involved in the charges are not suggestive of luxury items or services. After all, a debtor's routine charges for groceries or for medical care aren't luxuries. And a debtor who has made numerous monthly payments during the six months preceding her petition may well have intended to repay her debts. But here, Discovery claims that each and every charge the debtor made in the 90 days preceding the bankruptcy filing was a luxury charge. That suggests that little or no thought or analysis went into the drafting of this complaint and, in this judge's experience, that usually means that even less pre-filing investigation has been done. But, perhaps Discover will bring more to the table as it pursues this matter to a conclusion.[33]

---

[32] The Court counts ten days on the account statement in which multiple charges were made, ranging from two to four charges on the same day.

[33] And if it doesn't, Discover may have given the defendant ample fodder for recovery under § 523(d) and Rule 9011. *See In re Ritter,* 404 B.R. 811, 832 (Bankr. E.D. Pa. 2009) (consideration of factors in determining whether creditor's § 523(a)(2)(A) complaint was "substantially justified"); *See also In re Pusateri,* 432 B.R. 181, 203-04 (Bankr. W.D. N.C. 2010) (criticizing creditor's "shoot first, then aim" approach to filing nondischargeability complaints, filing of boilerplate complaint, lack of factual allegations, and lack of pre-filing inquiry).

-14-

Conclusion

Hankins' motion to dismiss is GRANTED as to the presumptive nondischargeability claim under § 523(a)(2)(C) and DENIED as to the fraud nondischargeability claim under § 523(a)(2)(A). Her answer is due 14 days after this Order's entry date and the Court will thereafter set this matter down for a pretrial scheduling conference. Discover is reminded of the provisions of § 523(d).

# # #